IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BUCKEYE INTERNATIONAL, INC.,

                    Plaintiff,

v.

SCHMIDT CUSTOM FLOORS, INC.,

                    Defendant.

OPINION & ORDER

18-cv-111-jdp

---

Plaintiff Buckeye International, Inc., sells floor finishing products, including Gym Bond, a bonding agent that is supposed to help a clear topcoat adhere to a previously finished gymnasium floor. Defendant Schmidt Custom Floors, Inc., used Gym Bond on the floors of several sports facilities, but the floors had problems with peeling. Schmidt was unhappy with Buckeye's response, so Schmidt turned to social media and email to voice complaints about Gym Bond and Buckeye. Buckeye contends that the peeling was caused by Schmidt's faulty preparation of the floor surface, and that Schmidt's complaints are false and damaging to Buckeye's reputation.

So Buckeye turns to this court for relief, with claims against Schmidt for false advertising under the Lanham Act, defamation, injurious falsehood, tortious interference with business relationships, tortious interference with a contract, injury to business, and declaratory judgment. Schmidt asserts counterclaims for breach of contract and breach of warranty.

Now before the court is Buckeye's motion for a preliminary injunction that would prohibit Schmidt from making future false statements and require Schmidt to, among other things, take down its social media postings about Buckeye, retract and correct the complaining emails, and publish corrective advertising. Dkt. 7.

The court will deny the motion for preliminary injunction for several reasons. Buckeye's motion relies solely on its false advertisement claim under the Lanham Act, which would require Buckeye to show that Schmidt's statements were made "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). A customer's complaints about a supplier's products and services, even if posted on social media, are not statements made in commercial advertising or promotion. And Schmidt has voluntarily removed its social media postings, which leaves its direct communications to its own customers and the trade association. At this point, the parties sharply and genuinely dispute the cause of the floor problems, and it would be inappropriate for the court to curtail Schmidt's complaints about Buckeye's product.

UNDISPUTED FACTS

The court begins with an evidentiary issue. Buckeye moves to strike the proposed findings of fact and affidavits Schmidt filed in opposition to Buckeye's motion for a preliminary injunction. Dkt. 29. This court's procedures for obtaining injunctive relief authorize an opposing party to file a response to the movant's proposed findings of fact; they do not authorize the opposing party to file its own proposed findings of fact, as Schmidt did here.[1] Buckeye will have no opportunity to respond to Schmidt's proposed findings of fact, so the court will not consider Schmidt's proposed findings in this order. *See Bernatello's Pizza, Inc. v. Hansen Foods, LLC*, 173 F. Supp. 3d 790, 794 (W.D. Wis. 2016).

As for the affidavits filed by Schmidt, Buckeye contends that portions of Jason Heiman's affidavit and the entirety of Roy Reichow's affidavit are inadmissible. The court will

---

[1] Procedure to be Followed on Motions for Injunctive Relief, *available at* http://www.wiwd.uscourts.gov/sites/default/files/Injunctive_Relief.pdf (last visited April 9, 2018).

not strike either affidavit. Reichow's affidavit would not suffice as a full-blown expert report under Federal Rule of Civil Procedure 26(a)(2)(B), but it is adequate as part of a response to a motion for preliminary injunction. The court is not persuaded that Heiman's affidavit includes significant information for which he does not have an adequate foundation of personal knowledge (except paragraph 37). The statements that Buckeye contends are hearsay were made by Buckeye's employee or agent, Fred Werth, so those statements would be admissible as party admissions under Federal Rule of Evidence 801(d)(2)(D).

The following facts are undisputed unless otherwise noted.

Buckeye sells janitorial products and floor finishing products. Schmidt is a flooring installer and refinisher. Schmidt buys Buckeye products through San-A-Care, Inc., Buckeye's exclusive distributor for the Milwaukee area. Buckeye and Schmidt do not compete, but some of Schmidt's customers also purchase Buckeye janitorial products through San-A-Care.

Gym Bond is designed to facilitate the bonding of a clear topcoat to a previously finished hardwood sports court, such as a basketball court or gymnasium. Schmidt used Gym Bond when it installed the floors of sports facilities at various schools and universities, but the topcoat eventually peeled off, and Schmidt's customers complained to Schmidt. Schmidt in turn complained to Buckeye and the National Wood Flooring Association. Dkt. 10-1, at 16–18. Buckeye initially agreed to pay to refinish some of the peeling floors while it investigated the cause of the peeling. Although the parties cooperated at first, ultimately Buckeye and Schmidt both denied fault and blamed the other for the peeling.

Schmidt contends that Buckeye cut off communication about the peeling problem and refused to make good on its promises to pay for remediation on floors that Schmidt had refinished using Gym Bond.

The parties agree that Schmidt complained about Gym Bond and Buckeye on social media and directly to Schmidt customers and trade associations. The statements at issue included the following:

- Buckeye admitted that Gym Bond is defective;

- Buckeye reformulated Gym Bond three times because of its defects;

- Buckeye admitted that its products have caused the floors of Schmidt's customers to peel off;

- Buckeye agreed to pay for repairs for all of Schmidt's customers;

- Buckeye issued a procedure on how to fix the peeling issues; and

- Buckeye is broke.

Dkt. 9, ¶ 19. The parties sharply dispute whether these statements are false.

Schmidt contends that it has taken down the social media postings, including those on Facebook, YouTube, LinkedIn, and Google Review. Dkt. 25, ¶ 40.

ANALYSIS

The familiar preliminary injunction standards apply. Buckeye must show that: (1) it will likely suffer irreparable harm before the final resolution of its claim without a preliminary injunction; (2) traditional legal remedies are inadequate; and (3) its claim has some likelihood of success on the merits. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). If Buckeye makes this showing, the court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to other parties or the public is sufficiently weighty that

the injunction should be denied." *BBL*, 809 F.3d at 324. The court will focus first on whether Buckeye's likelihood of success on the merits.

Buckeye bases its motion for injunction exclusively on its Lanham Act claim. This is an understandable choice because the other causes of action in the complaint would require Buckeye to show that Schmidt *knowingly* (or at least recklessly) made the false statements. On the record presented so far, that showing would be hard to make.

Section 43(a) of the Lanham Act prohibits making false statements "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). To prevail on a false advertising claim, a plaintiff must show that: (1) a defendant made a false statement of fact about its own or another's product in commercial advertising or promotion; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement. *Dyson, Inc. v. Sharkninja Operating LLC*, 259 F. Supp. 3d 816, 828 (N.D. Ill. 2017) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999)). Whether Schmidt's statements are false will be a central issue as this case proceeds. But at this point, the court will focus on the first element: whether Schmidt's social media postings and emails constitute commercial advertising or promotion.

The Lanham Act does not define commercial advertising or promotion. Courts that have considered their meaning have not provided an easily applied mechanical definition, but several principles are clear. As a starting point, the statutory concept "commercial advertising or promotion" is broader than classic advertising, and it is not limited to traditionally published or broadcast materials. *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 521-22 (7th Cir. 2012). There

5

is no requirement that the challenged communication be distributed broadly to the general public, but there must be some public dissemination. Individualized person-to-person communication, whether conducted in-person or by means of correspondence, is not within the scope of the statute. *See Sanderson v. Culligan Int'l Co.,* 415 F.3d 620, 624 (7th Cir. 2005) (person-to-person communications at trade shows is not commercial advertising or promotion); *ISI Int'l, Inc. v. Borden Ladner Gervais, LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (letters sent by a law firm to a company's business partners warning them not to use the company's products is not commercial advertisement or promotion). This principle—that individualized person-to-person communication is not "commercial advertising or promotion"—would rule out any Lanham Act claim based on Schmidt's emails or personal discussions with its customers, the trade association, or anyone else.

That leaves Schmidt's social media postings, which have been disseminated to some portion of the public. Buckeye is correct that communication by means of electronic or social media can constitute commercial advertising or promotion. But the medium of communication is not dispositive: not every social media posting would constitute commercial advertising or promotion, and even in-person presentations can constitute commercial advertising or promotion if they systematically cover a significant part of the market. *See Neuros*, at 522 (discussing in-person "road show" promotions). So it's not just the choice of medium, and not just the scope of dissemination. There is a qualitative aspect to "commercial advertising or promotion." To use the language of the Seventh Circuit Court of Appeals, promotion (of which advertising is a subset) is "a systematic communicative endeavor to persuade possible customers to buy the seller's product." *Neuros*, at 522. And this is where Buckeye's claim based on Schmidt's social media postings falters.

To decide whether a communication constitutes commercial advertising or promotion, some circuits apply the four-part test stated in *Gordon & Breach Sci. Publishers, S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994). To qualify as commercial advertising or promotion under this test, communication "must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff: (3) for the purpose of influencing consumers to buy defendant's goods or services . . . [and] (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273–74 (10th Cir. 2000). The Seventh Circuit Court of Appeals has not expressly endorsed this four-part test, but it hasn't explicitly rejected it either.

Under the *Gordon & Breach* test, Schmidt's social media postings critical of Buckeye and its Gym Bond product would not be commercial advertising or promotion because Schmidt and Buckeye are not competitors. So Schmidt's public complaining about Buckeye is not like a prototypical negative advertisement that disparages a competitor's goods to promote one's own. Traditional negative advertising would be commercial advertising or promotion, *see Neuros*, 698 F.3d at 522, but that's not what Schmidt is doing here. Schmidt is explaining that the trouble with its floor refinishing is not its fault. And Schmidt is warning Buckeye's customers about an alleged deficiency in one of Buckeye's products. There is no endeavor to persuade any potential customer to choose Schmidt's services. To put it in the terms used by the Seventh Circuit, Schmidt's social media postings are not "a systematic communicative endeavor to persuade possible customers to buy the seller's product." The lack of a competitive relationship between Schmidt and Buckeye makes it hard to fit Schmidt's communications into the Seventh Circuit definition of "commercial advertising or promotion."

7

So even though Schmidt is itself a commercial entity, the communications at issue in this case are, at heart, those of a customer who is unhappy with a supplier's product. The Lanham Act prohibits unfair competition; it does not insulate commercial entities from criticism. The Supreme Court has explained that "a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014). The converse is also true: a business accused of selling a faulty product cannot use the Lanham Act to insulate itself from criticism. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:97 (5th ed.). ("Lanham Act § 43(a) cannot be used to stifle criticism of a company's goods or services by another who is not a competitor.").

The court concludes that Buckeye has not shown sufficient likelihood of success on the merits because the objected-to statements do not constitute commercial advertising or promotion.

In light of this conclusion, the rest of the injunction analysis can be stated succinctly. The balance of harms to the parties was initially neutral: both sides (and their potential customers) have an interest in identifying the cause of the peeling of floors refinished by Schmidt. But, now that Schmidt has voluntarily withdrawn its social media postings, Buckeye would have a hard time showing irreparable harm without an injunction. The public interest tips against foreclosing Schmidt from offering its explanation of the peeling, even if it is critical of Gym Bond and Buckeye. The public interest is better served by Buckeye offering its counter-explanation rather than by shutting down Schmidt's side of the story.

The court will deny Buckeye's motion for a preliminary injunction.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion to strike defendant Schmidt Custom Floors, Inc.'s proposed findings of fact and affidavits of Roy Reichow and Jason Heiman, Dkt. 29, is GRANTED in part and DENIED in part.

2. Plaintiff Buckeye International, Inc.'s motion for a preliminary injunction, Dkt. 7, is DENIED.

Entered April 26, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge